**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | |
|---|---|
| JEFFREY M. JASKOL AND STACEY J. JASKOL, Individually and On Behalf Of All Others Similarly Situated, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | **JURY TRIAL DEMANDED** |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, THOMAS D. DAVIS, BRUCE C. HAYDEN, and GRANT THORNTON LLP, | |
| Defendants. | |

# PART 1 of 3



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY M. JASKOL AND STACEY J. JASKOL, Individually and On Behalf Of All Others Similarly Situated, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | **JURY TRIAL DEMANDED** |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, THOMAS D. DAVIS, BRUCE C. HAYDEN, and GRANT THORNTON LLP, | |
| Defendants. | |

Plaintiffs have alleged the following based upon the investigation of plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Xybernaut Corporation ("Xybernaut" or the "Company"), as well as regulatory filings and reports, securities analysts reports and advisories about the Company, press releases, and media reports about the Company, and plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.       This is a class action on behalf of all persons and entities who purchased or otherwise acquired the securities of Xybernaut between May 10, 2002 and April 8, 2005, inclusive, and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Xybernaut is engaged in the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems, and software and service solutions to enhance product management, asset management, and the accuracy,

timeliness and utilization of captured data. The Company's flagship products include Atigo ®
wireless displays, which are computerized units which provide remote and mobile service
representatives with wireless and just-in-time access to product and customer data, and Mobile
Assistant ® wearable computers, which provide the power and functionality of a desktop
computer in remote, rugged and space-constrained settings.

      3.    During the Class Period, Xybernaut reported quarter after quarter of
positive results in press releases and filings with the SEC. The Company attributed the results to,
among other things, the sale of its handheld and wearable computer devices, as well as cost-
cutting programs, financings, intellectual property licensing strategies, strategic partnerships and
securing key accounts in the transportation, retail, military and homeland security sectors. For
example, in a press release announcing the Company's fourth quarter and full-year 2003 results,
defendant Edward G. Newman, Chief Executive Officer and Chairman of Xybernaut, stated,
"Management firmly believes that the ***best is yet to come*** and ***we expect to extend the positive
momentum*** the Company is currently experiencing." (emphasis added). In reaction to
defendants' statements, the price of Xybernaut stock traded as high as $2.56 per share during the
Class Period (on September 18, 2003). Unbeknownst to the Class, these statements were
materially false and misleading because defendants failed to disclose that the Company's
purported success was the result of, in material part, improper accounting, made possible by a
serious breakdown in the Company's internal controls.

      4.    The truth began to emerge on February 17, 2005. On that day, after weeks
of decline in the price of Xybernaut stock, the Company issued a press release stating "that it
knows of no business reason or financial condition that would explain the decline in its stock
price." In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per
share, up $0.07 from its closing price on February 16, 2005.

5.    On March 14, 2005, Xybernaut issued a press release announcing that it would be unable to file its 2004 annual report on time. The Company stated that it expected to file its annual report by March 31, 2005. In reaction to this news, the price of Xybernaut stock fell $0.12 from its closing price of $0.72 on March 11, 2005, the previous trading day, to close at $0.60 on March 14, 2005.

6.    On March 31, 2005, after the market closed, defendants issued a press release revealing that it had discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks. The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters. The Company stated that as a result of the investigation, it could not predict when it would be able to file its 2004 annual report with the SEC, and cautioned that the delayed filing would prevent the Company from registering additional shares of stock. In addition, the Company revealed for the first time that, on February 1, 2005, *nearly two months earlier*, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder. Xybernaut also announced that it had received notification from Nasdaq that the Company's stock, which had been trading below $1.00 per share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

7.    On April 8, 2005, the last day of the Class Period, defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the Company's historical financial statements for fiscal 2002 and 2003; and the Company's financial statements for the interim first, second, and third quarters of 2002 and 2003. In reaction to this news, the

3

price of Xybernaut stock, which had already fallen $0.53 per share since the Company's March

14, 2005 announcement that it would not be able to timely file its annual report, fell another

$0.06 to close at $0.13 on the next trading day, April 11, 2005.

        8.      On April 19, 2005, after the market had closed, the Company announced

the completion of its internal investigation. Despite the report's lack of specificity, it made clear

that the Company's management had engaged in serious undisclosed wrongdoing that had had a

material impact on the Company's financial condition and performance, and which rendered all

statements by defendants suspect:

> 1. The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed to properly substantiate expenses charged to the Company.
>
> 2. Newman's family members were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.
>
> 3. The employment of Newman's family members had not been disclosed in SEC filings as required by SEC disclosure regulations.
>
> 4. The Company had failed to adhere to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.
>
> 5. Senior Management had entered into major transactions in violation of Company internal controls and concealed material financial conditions of the transactions to the Board.
>
> 6. Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and
>
> 7. Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

The Company stated that it had removed, or had requested the resignation of, the officers and

directors identified above. Moreover, the Company stated that Grant & Thornton had resigned

as auditor because "in its professional judgment, it can no longer rely on management's

4

representations." The Company repeated its warnings that "no reliance should be placed upon certain of the Company's historical financial statements, together with the related audit reports the Company received from its outside auditors."

9.    On April 25, 2005, Xybernaut announced that the United States Attorneys Office for the Eastern District of Virginia had commenced an investigation of the Company relating to the wrongdoing discovered in the Company's internal investigation. In addition, Xybernaut stated that "it continues to face a severe liquidity crisis and possible insolvency" and that there "can be no assurances that the Company will have sufficient cash to meet its financial obligations or fund continuing operations."

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

12.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. In addition, Xybernaut is incorporated in this District and maintains a registered office or agent in this District.

13.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the Nasdaq.

## PARTIES

14.    Plaintiffs Jeffrey M. Jaskol and Stacey J. Jaskol purchased Xybernaut common stock during the Class Period, as set forth in their certification, annexed hereto, and suffered an economic loss as a direct result of defendants' fraudulent conduct as alleged herein.

15.    Defendant Xybernaut is a Delaware corporation, and maintains its corporate headquarters at 12701 Fair Lakes Circle, Suite 550, Fairfax, Virginia 22033.

16.    Defendant Edward G. Newman ("E. Newman") was, at all relevant times, Chief Executive Officer and Chairman of the Board of the Company.

17.    Defendant Steven A. Newman ("S. Newman") was, at all relevant times, President, Chief Operating Officer and Vice Chairman of the Company.

18.    Defendant Thomas D. Davis ("Davis") was Chief Financial Officer and Senior Vice President of the Company from November 2002 to November 7, 2004.

19.    Defendant Bruce C. Hayden ("Hayden") was Chief Financial Officer and Senior Vice President of the Company from November 8, 2004 to present.

20.    Defendants E. Newman, A. Newman, Davis, and Hayden are collectively referred to herein as the "Individual Defendants."

21.    Defendant Grant Thornton LLP ("Grant Thornton") is a worldwide firm of certified public accountants that provides tax, assurance and advisory services. Grant Thornton is a member firm of Grant Thornton International, one of the six international accounting, tax and business advisory organizations. At all relevant times, Grant Thornton served as the Company's auditor until its resignation on, or about, April 14, 2005. Grant Thornton maintains its principal executive office in the United States at 175 West Jackson Boulevard, Chicago, Illinois 60604.

22.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

23.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Xybernaut, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

24.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the Nasdaq during the Class Period, and governed by the provisions of the federal securities laws,

the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

25.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Xybernaut, each of the Individual Defendants had access to the adverse undisclosed information about Xybernaut's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Xybernaut and its business issued or adopted by the Company materially false and misleading.

26.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of

the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

27.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Xybernaut common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Xybernaut's business, finances, financial statements and the intrinsic value of Xybernaut common stock; and (ii) caused plaintiffs and other members of the Class to purchase Xybernaut securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Xybernaut between May 10, 2002 and April 8, 2005, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, there were approximately 179 million shares of Xybernaut common stock outstanding that were actively traded on the Nasdaq. While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Xybernaut or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by defendants' acts as alleged herein;

b.    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial statements of Xybernaut; and

c.    to what extent the members of the Class have sustained damages and the proper measure of damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Materially False And Misleading
### Statements Made During The Class Period

34.    On May 9, 2002, after the market closed, Xybernaut issued a press release

in which it announced its first quarter 2002 results.  In the release, the Company reported "the

highest first quarter results in the Company's history," stating, in relevant part, as follows:

> FAIRFAX, Va.--(BUSINESS WIRE)--May 9, 2002--Xybernaut
> Corporation (Nasdaq:XYBR) today announced quarterly revenues of $2.8
> million for its first quarter ended March 31, 2002, the highest first quarter
> results in the Company's history.
>
> This represents a 24% increase compared with $2.3 million for the
> corresponding period a year ago.
>
> Hardware revenue for the quarter was $1.8 million, an increase of 38%
> from $1.3 million for the same period in the prior year. The net loss
> applicable to holders of common stock for the first quarter was $8.0
> million, or $0.13 per share, compared with $5.9 million, also $0.13 per
> share, for the same period in the prior year.
>
> Results for the first quarter are consistent with the guidance previously
> given.

Defendant Edward G. Newman commented on the purportedly strong results as follows, in

relevant part:

> "We are now beginning to see tangible results from the investments we
> have made in developing our technology platforms and our efforts to
> cultivate strategic vertical industry sectors," said Edward G. Newman,
> chairman, president and CEO for Xybernaut. "We have realized
> considerable success in various metrics that we consider key indicators of
> strong revenue growth. In addition, our restructuring activities are
> progressing well and we expect to achieve the savings outlined in our
> earlier announcement."

In addition, the Company reported the following:

> Enterprise customers are moving into broader deployments of Xybernaut
> solutions. Through the end of the first quarter 2002, the Company has sold
> more than 3,500 units of the Mobile Assistant series and realized over $17
> million in revenues from those sales.

11

Xybernaut continues to expand Team Xybernaut(SM), its community of value-added resellers (VARs) and systems integrators. As of the end of the first quarter of 2001, less than 20 companies were participating in Team Xybernaut. Comparatively, during the first quarter of 2002 alone Xybernaut completed more than 20 Team Xybernaut agreements bringing the number of completed Team Xybernaut agreements to more than 95 since the program's inception.

Guidance

The Company is increasing quarterly revenue guidance for the remainder of this year to 30% to 60% increases in revenue from the same quarters in the prior year.

This guidance is up from the 25% to 50% quarterly increase previously provided. This guidance range indicates expected revenues of $2.6 million to $3.2 million for the second quarter ending June 30, 2002.

35.    On May 15, 2002, the Company filed its first quarter 2002 report with the

SEC on a Form 10-Q, reiterating the results it had announced in the May 9, 2002 press release.

36.    On July 11, 2002, the Company issued a press release announcing that it

had raised more than $5 million in equity capital through a $4 million private placement of

common stock with institutional investors and the exercise of approximately $1 million of

warrants.

37.    On August 13, 2002, the Company issued a press release announcing its

second quarter 2002 results.  In the release, the Company stated as follows, in relevant part:

FAIRFAX, Va., Aug 13, 2002 (BUSINESS WIRE) -- Xybernaut(R) Corporation (Nasdaq: XYBR) today announced quarterly revenues of $2.0 million for its second quarter ended June 30, 2002, or approximately the same as revenues for the second quarter a year ago, and consistent with prior revised guidance. The net loss for the second quarter was $6.7 million, or $0.10 per share, compared with $8.5 million, or $0.17 per share, for the same period in the prior year.

Hardware revenue for the quarter was $1.2 million, an increase of 102% from $0.6 million for the same period in the prior year.

Operating expenses for the second quarter were $6.9 million, not including restructuring charges, a reduction of 21% from $8.7 million in the first quarter ending March 31, 2002 and a reduction of 31% from $10.1 million in the fourth quarter ending December 31, 2001.

12

Revenue for the six months ended June 30, 2002 was $4.8 million, representing an increase of 12% versus revenue of $4.3 million for the same period a year ago. The Company reported a net loss of $14.7 million for the first six months of 2002, or $0.23 per share, versus a loss of $14.4 million, or $0.30 per share, for the first six months of 2001.

"We are now beginning to see tangible results from the restructuring actions initiated earlier this year. These actions have included reductions in workforce, reductions in overseas operations and salary reductions for top executives ranging from 20-25%," said Edward G. Newman, chairman, president and CEO for Xybernaut. "With these cost reductions and expected revenue increases, we look forward to achieving our target of profitability in 2003," Newman added.

Revenue Guidance

The Company reaffirmed revenue guidance for the third and fourth quarters of 2002 at a 30 to 60% increase from the equivalent quarters in the prior year; however, the Company also noted that the timing of orders and shipment of product could affect the timing of revenue realized in each of those quarters.

38.    On the same day, August 13, 2002, the Company filed its second quarter 2002 report with the SEC on a Form 10-Q, reiterating its previously announced results.

39.    On November 14, 2002, Xybernaut issued a press release announcing its third quarter 2002 results. The release stated, in relevant part, as follows:

FAIRFAX, Va.--(BUSINESS WIRE)--Nov. 14, 2002--Xybernaut(R) Corporation (Nasdaq:XYBR) today announced quarterly revenues of $2.5 million for its third quarter ended September 30, 2002. This represents an increase of approximately 26% from revenues during the preceding second quarter of 2002 and an increase of approximately 10% over revenues during the comparable third quarter of 2001. The net loss for the third quarter was $7.9 million, or $0.10 per share, compared with $8.1 million, or $0.15 per share, for the same period in the prior year.

Operating expenses, excluding restructuring and other non-recurring charges, for the third quarter of 2002 were $6.0 million, a reduction of 41% from the fourth quarter of 2001 and 14% from the preceding second quarter of 2002.

Revenue for the nine months ended September 30, 2002 was $7.4 million, representing an increase of 11% versus revenue of $6.6 million for the same period a year ago. The Company reported net losses of $22.5 million for both the first nine months of 2002 and 2001.

13

"Throughout 2002, Xybernaut has successfully introduced new product lines, gained traction in critical industry segments, extended the Team Xybernaut(TM) partner community, strengthened our intellectual property position and demonstrated our ability to raise capital despite difficult market conditions," stated Edward G. Newman, chairman, president and CEO.

"We continue our drive to profitability and see significant benefits from the restructuring and cost cutting initiatives we have undertaken throughout 2002," continued Newman. "We expect to reduce our operating expenses by 50% over prior levels. We have significantly reduced our headcount, restructured agreements with vendors and partners, reduced inventory commitments and implemented various other cost saving strategies such as consolidating international operations. To build upon these successful efforts, I am pleased to announce management changes within Xybernaut."

* * *

Revenue Guidance

The Company's previous guidance for revenues in the fourth quarter of 2002 remains unchanged; however, the Company also noted that the timing of orders and shipment of product could affect the timing of revenue realized in that period.

40.    On the same day, November 14, 2002, the Company filed its third quarter 2002 report with the SEC on a Form 10-Q, reiterating its previously announced results.

41.    On March 27, 2003, Xybernaut issued a press release announcing its fourth quarter and full-year 2002 results. In the release, the Company reported a 2% increase in revenues compared to the same period in 2001 and a 17% increase in hardware revenues, stating in relevant part, as follows:

FAIRFAX, Va., Mar 27, 2003 (BUSINESS WIRE) -- Xybernaut(R) Corporation (NASDAQ: XYBR) today announced the results of its operations for the fourth quarter and full year 2002.

Total revenues for 2002 were $10.0 million, a 2% increase over 2001. These results include a 17% increase in 2002 hardware revenues to $6.1 million. Total revenues for the fourth quarter ended December 31, 2002 were $2.6 million, representing an increase of approximately 2% over revenues during the third quarter of 2002.

Net operating expenses for the fourth quarter of 2002 were $4.5 million, a reduction of 56% from the fourth quarter of 2001 and 26% from the third quarter of 2002. Net operating expenses exclude restructuring and certain other non-recurring charges and are discussed in further detail below. Net loss for 2002 decreased 17% from $32.2 million, or $0.63 per share, for 2001 to $26.6 million, or $0.37 per share, for 2002.

"Xybernaut continues to achieve considerable success despite challenging market conditions," stated Edward G. Newman, chairman, president and CEO. "We recently launched the third product in the successful Atigo(TM) family of mobile computers. We continue to strengthen our intellectual property, as evidenced through recent announcements of patent grants and an aggressive new licensing strategy. We have reorganized our management structure and strengthened our corporate governance through the appointment of two new independent directors to our board. Furthermore, we are amongst a small number of technology companies actually deploying comprehensive solutions into first responder and homeland security communities," added Newman.

"I am very pleased to announce that Xybernaut has surpassed our previously stated targets related to reductions in operating expenses, as evidenced by the 56% decline in net operating expenses for the fourth quarter of 2002 over the comparable 2001 period," stated Tom Davis, senior vice president and CFO. "Additionally, we have recently been successful in eliminating a considerable amount of long-term liabilities and commitments relating to both product and inventory."

42.    On March 28, 2003, Xybernaut filed its 2002 annual report with the SEC on a Form 10-K, reiterating its previously announced results in the March 27, 2003 press release.

43.    On April 2, 2003, the Company announced that it had raised $6.1 million from the completion of a $2.0 million private placement of common stock with institutional investors, a long-term borrowing of $1.75 million and the exercise of approximately $2.4 million of warrants. In reaction to this news, the price of Xybernaut stock rose $0.04 per share from its previous day's closing price of $0.38, to close at $0.42 on April 2, 2003.

44.    On June 19, 2003, the Company issued a press release announcing that it had raised another $7.75 million through private placements of Xybernaut common stock and the exercise of warrants.

15

45.    On August 11, 2003, the Company issued a press release announcing its

second quarter 2003 results.  The Company stated, in relevant part, as follows:

> FAIRFAX, Va., Aug 11, 2003 (BUSINESS WIRE) -- Xybernaut(R)
> Corporation (NASDAQ:XYBR) today announced that total revenue for
> the second quarter of 2003 (three months ended June 30) was $2.8 million,
> a 56% increase from the preceding first quarter of 2003, and a 38%
> increase from the comparable period in 2002.
>
> As of June 30, the Company had no long-term debt, a stockholders' equity
> balance of over $11 million and more than $5 million of cash on-hand.
> Subsequent to June 30, the Company also reported that it had raised an
> additional $3 million through warrant exercises.
>
> Hardware revenue for the second quarter of 2003 was $1.8 million, a
> 115% increase from the first quarter of 2003 and a 53% increase from the
> second quarter of 2002.
>
> Gross margin from hardware sales increased to 33% for the three months
> ended June 30, 2003 as compared with 12% for the three months ended
> June 30, 2002. Margin for consulting and other sales increased to 38% in
> the second quarter of 2003 versus 34% in the second quarter of 2002.
>
> The net loss for the second quarter of 2003 decreased over 50% to $3.3
> million from the second quarter of 2002. The net loss per share also
> decreased to $0.02 per share from $0.10 per share in the prior year.
>
> "The Company is moving in the right direction in virtually all areas. We
> are pleased with our second quarter results and especially the record
> revenue levels that we achieved. We are determined to do even better on
> all fronts as we move forward and my outlook remains highly positive,"
> stated Steven A. Newman, Xybernaut president.
>
> Thomas D. Davis, senior vice president and CFO, added, "We have
> continued our cost cutting efforts into 2003, streamlined operations and,
> with significant cash on-hand we now believe that we have more than
> enough capital to last us through the end of the year."
>
> "From recent meetings with executives of some of the world's largest
> companies, I've seen first hand that these business leaders recognize that
> wearable computing has moved from a possible to a preferred mobile
> computing solution," stated Edward G. Newman, chairman and CEO.
> "Our primary objective is to steadily increase stakeholder value by
> leveraging these relationships and others as well as our expertise and
> successes to produce tangible results."

46.    On August 13, 2003, the Company filed its second quarter 2003 report with the SEC on a Form 10-Q which reiterated the results announced in the August 11, 2003 press release.

47.    On September 10, 2003, the Company issued a press release announcing that it had been awarded a contract worth $1.62 million by the U.S. Department of Defense to provide wearable computing technologies and solutions for U.S. military aircraft and defense maintenance systems. Defendant E. Newman touted the award of the defense contract, stating as follows:

> "We are clearly proving that we have the desired mix of products, professional services and industry expertise to successfully compete for and win large contract awards from the U.S. military," stated Edward G. Newman, chairman and chief executive officer of Xybernaut. "Our years of effort invested in cultivating opportunities in this sector are yielding tangible, quantifiable results and demonstrate that Xybernaut is indeed being viewed as the preferred solution provider of wearable/computing solutions for our military forces."

In addition, defendant S. Newman stated as follows:

> "Xybernaut continues to execute key growth strategies to develop scalable, replicable mobile/wearable computing solutions that anticipate our customers' needs and deliver full function computing power where and when it is needed," said Steven A. Newman, Xybernaut president. "Xybernaut is meeting the unique and sophisticated demands of the U.S. military and fully expects that this relationship will drive dynamic revenue growth for our Company on an on-going basis."

In reaction to this news, the price of Xybernaut stock traded as high as $1.40 per share on volume of over 25 million on September 10, 2003 before closing at $1.25.

48.    On September 29, 2003, the Company announced the completion of another private placement of Xybernaut common stock for proceeds of approximately $7 million. In addition, the Company stated that it had received notification from Nasdaq that it was in full compliance with Nasdaq continued listing requirements. Defendants Davis and E. Newman commented on the purported success of the financing as follows:

17

"These financings were executed with favorable terms and help us achieve what I consider to be the Company's strongest financial position since the initial public offering," stated Thomas D. Davis, Xybernaut CFO. "We have a strong cash position, maintain no debt and continue to keep our operating expenses at a low level."

"We've seen positive results in recent quarters from our sales, marketing and business development efforts; we've introduced new and innovative products; we've secured important patents while aggressively protecting our intellectual property; and we are involved in numerous business ventures with key partners," said Edward G. Newman, Xybernaut chairman and CEO. "By taking advantage of this opportunity to strengthen our capital structure, Xybernaut is in a better position than ever to extend our recent positive momentum and continue to deliver the results that our customers and stakeholders deserve."

49.    On November 13, 2003, Xybernaut issued a press release announcing its

third quarter 2003 results, including a 6%, or $2.7 million, increase in revenues compared to the

same period in 2002.  In the release, the Company stated, in relevant part, as follows:

FAIRFAX, Va., Nov 13, 2003 (BUSINESS WIRE) -- Xybernaut(R) Corporation (NASDAQ:XYBR) today announced that total revenue for the third quarter of 2003 (three months ended September 30) was $2.7 million, a 6% increase from the same period in 2002. These results represent the second highest levels of both U.S. revenues as well as worldwide consulting revenues in the Company's history.

Net operating expenses for the three months ended September 30, 2003 declined for the seventh consecutive quarter to $3.8 million. This represents a reduction of over 62% from the fourth quarter of 2001 and a 36% reduction from the third quarter of 2002.

The term "net operating expense" is discussed and reconciled in the "Non-GAAP Financial Measure" section of this press release.

At September 30, the Company had no long-term debt, record quarter-end cash of over $13 million and record stockholders' equity of over $17 million.

The net loss for the third quarter of 2003 decreased 41% to $4.7 million from the third quarter of 2002. The net loss per share also decreased to $0.03 per share from $0.10 per share in the prior year.

Defendant Davis commented on purportedly strong results, stating "Our future has never looked

brighter."  In addition, Davis stated as follows, in relevant part:

18

Thomas D. Davis, CFO, noted, "Our cash and stockholders equity balances are both at record levels, we have no long term debt and we have successfully cut costs for seven consecutive quarters. I continue to believe that we have the strongest financial position since our IPO."

"Perhaps one of the best measures of our success is our ability to replicate customer wins in strategic markets," stated Steven A. Newman, president of Xybernaut. "For example, since the Company's inception, we have secured hardware and services contracts in the transportation sector, alone, surpassing more than $10 million. This focused approach is also producing similar strong results in many other targeted industries. Our future has never looked brighter."

50.    On the same day, November 13, 2003, the Company filed its third quarter

2003 report with the SEC on a Form 10-Q, reiterating the results it had announced in the press

release issued on the same day.

51.    On March 9, 2004, the Company issued a press release announcing

"record" results for the fourth quarter and full-year 2004.  In the release, the Company stated, in

relevant part, as follows:

The Company recorded its highest quarterly revenue ever during the fourth quarter of 2003. Revenue for the quarter ended December 31, 2003 was $3.7 million, a 43% increase over the fourth quarter of 2002 and a 38% increase over the third quarter of 2003. Total revenue for the full year 2003 increased 10% to $11.0 million, compared to $10.0 million for 2002. These year-end results include the highest levels of both product and consulting services revenues in the Company's history.

The Company's net loss for the fourth quarter of 2003 was $5.3 million compared to a loss of $4.0 million in the comparable quarter of the prior year. The net loss for the entire year ended December 31, 2003 was $18.6 million compared to a loss of $26.6 million for 2002.

At December 31, 2003, the Company had no long-term debt, cash of $9.5 million and stockholders' equity of $15.9 million.

"The management and staff at Xybernaut have never been more focused," said Edward G. Newman, chairman and CEO of Xybernaut. "From record revenues, no debt and strong financial fundamentals; to growing demand from existing and new customers; to recent international successes, we are achieving on every level. Building on these achievements, management continues to be optimistic and encouraged by the prospects for 2004 and beyond."

19