# CMH&T

## COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

WASHINGTON • NEW YORK • PHILADELPHIA • CHICAGO

RECEIVED
JUN 13 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

June 10, 2005

**BY UPS OVERNIGHT**
Clerk of Court
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3518

Re:     *In re XYBERNAUT CORP. SECURTIES LITIGATION*

Dear Clerk:

Pursuant to Rule 5.12(c) of the Rules of Procedure of The Judicial Panel on Multidistrict Litigation enclosed is one courtesy copy of the following documents which were filed with the Panel on June 10, 2005:

1.     Don R. Heilman, Simona Zuccarelli, And Dean Lawther's Motion To Transfer Related Actions To The United States District Court For The Eastern District Of Virginia And To Consolidate, Or, In The Alternative, Coordinate, All Pretrial Proceedings Therein;

2.     Don R. Heilman, Simona Zuccarelli, And Dean Lawther's Memorandum in Support of Their Motion To Transfer Related Actions To The United States District Court For The Eastern District Of Virginia And To Consolidate, Or, In The Alternative, Coordinate, All Pretrial Proceedings Therein;

3.     Certificate of Service

4.     Supplemental Certificate of Service

Sincerely,

Jason M. Leviton

JML:sje

Enclosures

---

1100 New York Avenue, N.W. • Suite 500, West Tower • Washington, D.C. 20005
Phone (202) 408-4600 • Fax (202) 408-4699 • www.cmht.com

AFFILIATED OFFICES: UNITED KINGDOM • ITALY • SOUTH AFRICA • PANAMA • AUSTRALIA

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE XYBERNAUT CORP. | ) |
| SECURITIES LITIGATION | ) |

MDL DOCKET NO. _____

**DON R. HEILMAN, SIMONA ZUCCARELLI, AND DEAN
LAWTHER'S MOTION TO TRANSFER RELATED
ACTIONS TO THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA AND
TO CONSOLIDATE, OR, IN THE ALTERNATIVE,
COORDINATE, ALL PRETRIAL PROCEEDINGS THEREIN**

Pursuant to 28 U.S.C. § 1407(c)(ii), Don R. Heilman, Simona Zuccarelli, and Dean

Lawthers ("Movants"), respectively named plaintiffs in the cases styled *Don R. Heilman, et al. v.*

*Xybernaut Corp., et al.*, No. 1:05-CV-00525 (LMB) (E.D. Va. May 9, 2005); *Simona Zuccarelli,*

*et al. v. Xybernaut Corp., et al.*, No. 1:05-CV-00610 (LMB) (E.D. Va. June 2, 2005); and *Dean*

*Lawthers, et al. v. Xybernaut Corp., et al.*, No. 1:05-CV-00617 (TSE) (E.D. Va. June 3, 2005),

presently pending in the United States District Court for the Eastern District of Virginia,

respectfully move the Judicial Panel on Multidistrict Litigation to enter an order transferring,

consolidating, or, in the alternative, coordinating, all related actions to or in the United States

District Court for the Eastern District of Virginia. In support thereof, and as set forth more fully

in the accompanying Memorandum of Law, the grounds for this motion are as follows:

(1)    Since April 15, 2005, ten class action complaints have been filed against

Xybernaut Corporation ("Xybernaut" or the "Company") and certain of its officers

and directors, and Grant Thornton LLP alleging violations of the federal securities

laws.  Pursuant to Rule 7.2(a)(ii) of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, attached hereto is a Schedule setting forth the complete

captions of each case, the district in which each case is pending, the civil action

number of each case and the judge assigned to each case, along with the date each

action was filed with the Court.

(2)    Three actions have been filed in the United States District Court for the Eastern

District of Virginia (the "Virginia Actions").

(3)    Seven actions have been filed in the United States District Court for the District of

Delaware (the "Delaware Actions").

(4)    Xybernaut maintains its corporate headquarters in Fairfax, Virginia.  Grant

Thornton LLP audited the Company's financial and operational results from its

Vienna, Virginia office.  Accordingly, many of the acts and transactions

constituting the violations of law alleged in the class action complaints occurred

in substantial part within the Eastern District of Virginia.

(5)    On information and belief, because Xybernaut maintains its corporate

headquarters in Fairfax, Virginia, many documents and witnesses relevant to the

class actions are located in the Eastern District of Virginia.

(6)    On information and belief, because Grant Thornton LLP audited the Company's

financial and operational results from its Vienna, Virginia office, many documents

2

and witnesses relevant to the class actions are located in the Eastern District of Virginia.

(7)    On information and belief, all four individual defendants reside within 51 miles of the Eastern District's Alexandra, Virginia courthouse.

(8)    On information and belief, all four defendants reside from 118 miles to 142.7 miles from the District of Delaware.

(9)    The U.S. Attorneys Office for the Eastern District of Virginia is currently investigating Xybernaut.

(10)   The Class Periods set forth in the class action complaints substantially overlap, beginning as early as May 10, 2002, and ending as late as April 19, 2005.

(11)   The class action complaints involve common questions of fact, to wit, whether Xybernaut, together with certain officers and directors, and Grant Thornton LLP, violated the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78(j)(b), 78(t)(a), and the rules and regulations promulgated thereunder, including Rule 10b-5, 17 C.F.R. §240.10b-5.

(12)   Transfer of the class actions to the Eastern District of Virginia for consolidation and/or coordination of pretrial proceedings would promote the convenience of parties and witnesses and the just and efficient conduct of these cases.

**WHEREFORE,** Movants respectfully move the Panel to (i) transfer all presently pending and subsequently filed or "tag-along" cases to the United States District Court for the Eastern District of Virginia, for consolidation under the caption of the lowest-numbered case, or,

3

in the alternative, to (ii) coordinate all pretrial proceedings in the related cases in the United

States District Court for the Eastern District of Virginia.

Dated: June 10, 2005                      Respectfully submitted,

                              **COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

                              Steven J. Toll
                              Daniel S. Sommers
                              Scott L. Adkins
                              Jason M. Leviton
                              1100 New York Avenue, N.W.
                              West Tower, Suite 500
                              Washington, DC 20005-3934
                              Tel:  (202) 408-4600
                              Fax: (202) 408-4699
                              ***Counsel for Movants Don R. Heilman, Simona***
                              ***Zuccarelli, and Dean Lawthers***

                              **GLANCY BINKOW & GOLDBERG LLP**
                              Lionel Z. Glancy
                              Michael Goldberg
                              Dale MacDiarmid
                              1801 Avenue of the Stars, Suite 311
                              Los Angeles, CA 90067
                              Tel: (310) 201-9150
                              Fax: (310) 201-9160
                              ***Counsel for Movant Simona Zuccarelli***

                              **SPECTOR, ROSEMAN & KODROFF, P.C.**
                              Robert M. Roseman
                              Andrew D. Abramowitz
                              1818 Market Street, Suite 2500
                              Philadelphia, PA 19103
                              Tel: (215) 496-0300
                              Fax: (215) 496-6611
                              ***Counsel for Movant Dean Lawthers***

### *SCHEDULE OF CASES*

*(1) Don R. Heilman, On Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 05-CV-00525 (E.D. Va. May 9, 2005)(Judge Leonie M. Brinkema).*

*(2) Simona Zuccarelli, On Behalf Of Herself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 05-CV-00610 (E.D. Va. June 2, 2005)(Judge Leonie M. Brinkema).*

*(3) Dean Lawthers, On Behalf Of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 05-CV-00617 (E.D. Va. June 3, 2005)(Judge T.S. Ellis, III).*

*(4) Robert H. Aylor, Jr., On Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, No. 05-CV-00222 (April 15, 2005)(Judge Sue L. Robinson).*

*(5) Moshe Tal, On Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, No. 05-CV-00242(April 26, 2005)(Judge Sue L. Robinson).*

*(6) Michael Fehrenbacher, Individually and on Behalf of All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, No. 05-CV-00256 (May 2, 2005)(Judge Sue L. Robinson).*

*(7) Steven M. Jaskol and Stacey J. Jaskol, Individually and on Behalf of All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 05-CV-00268 (May 4, 2005)(Judge Sue L. Robinson).*

*(8) Joseph Daniel Wauhop, On Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, M.D., Thomas D. Davis, John F. Moynahan, and Grant Thornton LLP, No. 05-CV-00310 (May 18, 2005)(Unassigned Judge).*

*(9) Christina W. Donnelly, James W. G. Williamson, and Richard W. Dearborn, Individually and On Behalf of All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 1:05-CV-00334 (May 26, 2005) (Judge Joseph J. Farnan, Jr.).*

5

*(10) Charles W. Smith, Individually and On Behalf of All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, Steven A. Newman, Thomas D. Davis, Bruce C. Hayden, and Grant Thornton LLP, No. 1:05-CV-00354 (June 2, 2005) (Unassigned Judge).*

6

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE XYBERNAUT CORP.          ) | MDL DOCKET NO. _____ |
| SECURITIES LITIGATION _____ ) | |

**DON R. HEILMAN, SIMONA ZUCCARELLI, AND DEAN
LAWTHERS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER RELATED ACTIONS
TO THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA AND
TO CONSOLIDATE, OR, IN THE ALTERNATIVE,
COORDINATE, ALL PRETRIAL PROCEEDINGS THEREIN**

Pursuant to 28 U.S.C. § 1407(c)(ii), Don R. Heilman, Simona Zuccarelli, and Dean

Lawther ("Movants"), the named plaintiffs in the cases styled *Don R. Heilman, et al. v.*

*Xybernaut Corp., et al.*, No. 1:05-CV-00525 (E.D. Va. May 9, 2005); *Simona Zuccarelli, et al. v.*

*Xybernaut Corp., et al.*, No. 1:05-CV-00610 (LMB) (E.D. Va. June 2, 2005); and *Dean*

*Lawthers, et al. v. Xybernaut Corp., et al.*, No. 1:05-CV-00617 (TSE) (E.D. Va. June 3, 2005)

presently pending in the United States District Court for the Eastern District of Virginia,

respectfully move the Judicial Panel on Multidistrict Litigation to enter an order transferring,

consolidating, or, in the alternative, coordinating, all related actions therein to or in the United

States District Court for the Eastern District of Virginia.

## I. <u>INTRODUCTION</u>

On April 15, 2005, the first of a series of class action lawsuits was filed in the United States District Court for the District of Delaware against Xybernaut Corporation ("Xybernaut" or the "Company") and certain of its officers and directors. That action, entitled *Robert Aylor, Individually and on Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, M.D. Steven A. Newman, and Thomas D. Davis*, No. 1:05-CV-00222 (D. Delaware April 15, 2005) (the "Aylor Action"), sought relief for a class of persons who purchased the securities of Xybernaut and to recover damages caused by the defendants' alleged violations of the federal securities laws. By June 7, 2005, nine more cases had been filed against the same or similar defendants. As of the date of this filing, a total of ten class actions have been filed against the same or similar defendants. In addition, seven of the cases name Xybernaut's former auditor, Grant Thornton LLP, as a defendant.

The cases allege substantially overlapping and interrelated facts that implicate the same or similar legal issues:  defendants' liability under the federal securities laws (15 U.S.C. § 78(j)(b), 78(t)(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder) in connection with the Company's admitted accounting improprieties in direct conflict with the Company's own corporate governance policies and Generally Accepted Accounting Practices ("GAAP") for fiscal years 2002 through 2005.

Venue is proper in the Eastern District of Virginia, where many of the acts and transactions constituting the violations of law alleged in the complaints are believed to have occurred.  In addition, Xybernaut's headquarters is located in Fairfax, Virginia; all individual defendants maintain primary residences within the Eastern District of Virginia; and Grant

2

Thornton LLP's audits were conducted from its Vienna, Virginia office. Moreover, the United

States Attorney for the Eastern District of Virginia has launched an investigation into Xybernaut

and certain of its officers and directors, and the Company's Audit Committee, through its legal

counsel, has contacted the Securities and Exchange Commission ("SEC"), which is

headquartered in nearby Washington, D.C., in connection with the Company's internal

investigation and findings.

## II. BACKGROUND OF THE DISPUTE

As alleged in the various related complaints, beginning as early as May of 2002, and

continuing through April of 2005, defendants reported quarter after quarter of positive results in

press releases and filings with the SEC. The Company attributed the results to, among other

things, the sale of its handheld and wearable computer devices, as well as cost-cutting programs,

financings, intellectual property licensing strategies, strategic partnerships and securing key

accounts in the transportation, retail, military and homeland security sectors. *See Heilman

Complaint* (attached hereto as Exhibit One)[1]. For example, in a press release announcing the

Company's fourth quarter and full-year 2003 results, defendant Edward G. Newman, Chief

Executive Officer and Chairman of Xybernaut, stated, "Management firmly believes that *the best

is yet to come* and *we expect to extend the positive momentum the Company is currently

experiencing*." (Emphasis added). In reaction to defendants' statements, including the one

above, the price of Xybernaut stock traded as high as $2.56 per share during the period from May

10, 2002 through and including April 8, 2005 (the "Class Period"). Unbeknownst to the Class,

_____

[1]All factual allegations set forth herein pertaining to defendants' alleged fraudulent
conduct are derived from the *Heilman Complaint*.

3

however, and belatedly admitted by the Company on April 19, 2005, these statements were materially false and misleading because defendants failed to disclose the Company's purported success was the result of, in material part, improper accounting, made possible by a serious breakdown in the Company's internal controls. *See* April 19, 2005 Press Release, "Xybernaut Announces Completion of Audit Committee Investigation, Board's Adoption of Recommendations" (attached as Exhibit Two).

On February 17, 2005, after weeks of decline in the price of Xybernaut stock, the Company issued a press release stating "that it knows of no business reason or financial condition that would explain the decline in its stock price." In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per share, up $0.07 from its closing price on February 16, 2005.

On March 31, 2005, after the market closed, defendants issued a press release revealing that it had discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks. The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters. The Company stated that as a result of the investigation, it could not predict when it would file its 2004 annual report with the SEC, and cautioned that the delayed filing would prevent the Company from registering additional shares of stock. In addition, the Company revealed for the first time that, on February 1, 2005, nearly two months earlier, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder. Xybernaut also announced that it had received notification from Nasdaq that the Company's stock, which had been trading below $1.00 per

4

share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

On Friday, April 8, 2005, defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the Company's historical financial statements for fiscal 2002 and 2003; and the Company's financial statements for the interim first, second, and third quarters of 2002 and 2003. In reaction to this news, the price of Xybernaut stock, which had already fallen $0.53 per share since the Company's March 14, 2005 announcement that it would not be able to file its annual report, fell another $0.06 to close at $0.13 on the next trading day, Monday, April 11, 2005.

Less than two weeks later, on April 19, 2005, after the market had closed, the Company announced the completion of its internal investigation. Despite the report's lack of specificity, it made clear that the Company's management had engaged in serious undisclosed wrongdoing that had a material impact on the Company's financial condition and performance, and which rendered all statements by defendants suspect. The release stated in part, as follows:

1. The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed properly to substantiate expenses charged to the Company.

2. Members of the CEO's family employed by the Company were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.

3. The employment of certain members of the CEO's family was not disclosed in SEC filings as required by SEC disclosure regulations.

5

4.    There has been a lack of adherence to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.

5.    Major transactions were entered into by certain members of senior management in violation of Company internal controls. Certain members of senior management failed properly to advise the Board of material financial conditions regarding major transactions.

6.    Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and

7.    Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

In response to the Audit Committee's Report and Recommendations, the Board today approved the following actions:

1.    Edward G. Newman was removed as Chairman of the Board and Chief Executive Officer of the Company, and from all other positions he holds with any Company subsidiaries or affiliates.

2.    Steven A. Newman was removed as President and Chief Operating Officer of the Company, and Vice Chairman of the Board, and from all other positions he holds with any Company subsidiaries or affiliates.

3.    The Board formally requested the resignations of Edward G. and Steven A. Newman as Directors of the Company, but neither individual has agreed to resign from the Board at this time.[2]

4.    Retired General William Tuttle was appointed as the Company's interim Chairman of the Board and Chief Executive Officer, while a search is conducted for new management.

5.    The Board authorized the retention of financial experts to assist the Board in maximizing shareholder value.

6.    In an effort to promote the independence of the Company's Board, three directors of the Company – James J. Ralabate, Dr. Edwin Vogt and Martin

---

[2]In a press release dated May 10, 2005, Xybernaut announced the resignation of Steven and Edward Newman from the Company's Board of Directors.

6

> Weisberg, each of whom provides other services for the Company –
> offered to resign from the Board. The Board determined to defer its
> acceptance of these offers upon an orderly transition to a new Board.

As a result of the Company's massive fraud, the release also announced that Grant Thornton LLP had resigned because "in its professional judgement, it can no longer rely on management's representations..." However, as is disclosed in the same release, Grant Thornton LLP was not as innocent as they may have proclaimed. For example,

> [t]he report of Grant Thornton LLP on the Company's financial statements for the
> 2002 and 2003 fiscal years did not contain an adverse opinion or a disclaimer of
> opinion and were not qualified or modified as to uncertainty, audit scope, or
> accounting principles. In addition, in connection with the audits of the Company's
> financial statements ... there were no disagreements between the Company and
> Grant Thornton LLP on any matter of accounting principles or practices, financial
> statement disclosure, or auditing scope or procedure which, if not resolved to the
> satisfaction of Grant Thornton LLP, would have caused Grant Thornton LLP to
> make reference to the matter in connection with its report.

The class action complaints seek recovery for violations of the federal securities laws under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder by the SEC.

For the reasons set below, the cases should be transferred to the United States District Court for the Eastern District of Virginia and consolidated, or, in the alternative, coordinated therein.

### III. ARGUMENT

The Multidistrict Litigation Act sets forth three requirements for transfer. The transfer must: (i) involve actions having one or more common questions of fact; (ii) further the "just and efficient conduct" of the actions; and (iii) promote "the convenience of the parties and

7

witnesses." *See* 28 U.S.C. § 1407(a).  In determining whether to transfer, the Panel is to weigh the interests of all parties and to consider the litigation as a whole.  *See, e.g., In re Stirling Homex Corp. Sec. Litig.,* 442 F. Supp. 547, 550 (J.P.M.L. 1977) (citation omitted).  Where significant benefits will be gained by coordinated and consolidated proceedings, a transfer should be ordered.  *See In re New York City Mun. Sec. Litig.,* 439 F. Supp. 267, 270 (J.P.M.L. 1977).  Class actions with similar or overlapping classes, in particular, are appropriate for transfer and coordinated or consolidated pretrial proceedings.  *See, e.g., In re Resources Exploration, Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980); In *re Air West, Inc. Sec. Litig.,* 384 F. Supp. 609, 611 (J.P.M.L. 1974); *In re Republic National-Realty Equities Sec. Litig.,* 382 F. Supp. 1403, 1406 (J.P.M.L. 1974).

Here, the requirements for transfer under the Multidistrict Litigation Act are satisfied. Moreover, the balance of interests and other relevant factors lead to the conclusion that the most appropriate transferee forum is the Eastern District of Virginia.

### A.    The Actions Involve Core Common Questions of Fact

Each of action is based on essentially the same core allegation: that Xybernaut, together with certain of its officers and directors, knowingly or recklessly engaged in improper accounting practices that permitted the Company to report quarter after quarter of positive results in press releases and filings with the SEC.  The effect of these practices was to create the illusion that the Company was experiencing steady growth throughout the Class Period, which, in turn, had the effect of increasing the purchase price of Xybernaut's stock.  The Defendants knowingly engaged in these improper practices throughout the Class Period without disclosing them to shareholders.

8

Each action asserts that the Company misrepresented and/or failed to disclose material facts concerning the Company and its finances based on the core allegation set forth above. Further, each action purports to bring claims on behalf of investors who purchased Xybernaut securities over the course of substantially overlapping class periods.[3]  Such cases are routinely found to involve common questions of fact sufficient to warrant transfer. *See, e.g., In re Waste Mgmt. Inc. Sec. Litig.,* 177 F. Supp. 2d 1373 (J.P.M.L. 2001); *In re Abercrombie & Fitch Co. Sec. Litig.,* No. 1336, 2000 U.S. Dist. LEXIS 4717 (J.P.M.L. Apr. 12, 2000); *In re Phar-Mor, Inc. Sec. Litig.,* No. 959, 1994 WL 41830, at * 1 (J.P.M.L. Jan. 31, 1994); *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 568 F. Supp. 1250 (J.P.M.L. 1983); *In re Four Seasons Sec. Laws Litig.,* 361 F. Supp. 636 (J.P.M.L. 1973).  *See also 15* Charles A. Wright & Arthur R. Miller, *Federal Prac. & Proc.* § 3862 (observing that Section 1407 was specifically contemplated to deal with actions involving allegations of violations of the securities laws).

**B.     Transfer For Pretrial Consolidation or Coordination**
        **<u>Would Further the Just and Efficient Conduct of the Actions</u>**

Given that the actions present core common questions of fact, the actions will necessarily involve substantially similar and overlapping discovery.  Moreover, each of the ten class action assert the same federal securities laws claims on behalf of substantially similar or overlapping classes.  Thus, transfer is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.,* 177 F. Supp. 2d 1375, 1376

---

[3] The Class Period begins as early as May 10, 2002, and as late as March 27, 2003; it ends as early as April 8, 2005 and as late as April 19, 2005.  However, as noted herein, the slight differences in class periods does not preclude consolidation or transfer.

(J.P.M.L. 2001); *In re Computervision Corp. Sec. Litig.,* 814 F. Supp. 85 (J.P.M.L. 1993); *see also In re Practice of Naturopathy Litig.,* 434 F. Supp. 1240, 1243 (J.P.M.L. 1977) ("presentation of [motions to dismiss] to a single judge will further the purposes of Section 1407"); *In re Gen. Tire & Rubber Co. Sec. Litig.,* 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) (having actions before one judge would "ensure that duplicative discovery on the complex factual questions will be prevented" and "eliminat[e] the possibility of conflicting pretrial rulings"); *In re Transocean Tender Offer Sec. Litig.,* 415 F. Supp. 382, 384 (J.P.M.L. 1976) (transfer necessary to avoid conflicting rulings on pretrial motions).

    C.    **The Eastern District of Virginia is the Most Appropriate Transferee Forum**

       The location of documents and witnesses and the residence and location of the defendants are important factors in determining an appropriate transferee forum. *See, e.g., In re Air Crash Disaster at Paris, France, on March 3, 1974,* 376 F. Supp. 887, 888 (J.P.M.L. 1974). As is set forth herein and in the accompanying motion, Xybernaut's headquarters is in Fairfax, Virginia – approximately 23.7 miles from the Alexandria federal courthouse. Thus, many of the relevant documents and witnesses are likely to be located in, or just outside of, Northern Virginia. Moreover, given that the pending federal investigation of Xybernaut is being conducted by the U.S. Attorneys Office for the Eastern District of Virginia, it is likely that many pertinent documents will ultimately be located in, or just outside of, the Eastern District of Virginia even if they are not presently housed there. *See* attached press release attached hereto as Exhibit Three.

       On information and belief, defendants Thomas Davis, Edward Newman, Steven Newman, and Bruce Hayden live approximately 15.8 miles, 19.3 miles, 20.6 miles, and 51.9

miles from the Eastern District's Alexandria division, respectively.[4]  Other witnesses – such as

other employees of Xybernaut and Grant Thornton LLP – and documents in the possession of

these witnesses are also likely to be located in, or near, the Eastern District of Virginia.  In any

event, on information and belief, no defendant resides in Delaware or near the District of

Delaware.  In fact, on information and belief, defendants Edward Newman, Bruce Hayden,

Thomas Davis, and Steven Newman live approximately 142.7 miles, 141.3 miles, 122.7 miles,

and 118 miles from the District of Delaware's Wilmington courthouse.  Thus, pursuant to

Federal Rule of Civil Procedure 45, both the witnesses and the many relevant documents to this

litigation lie within the Eastern District's subpoena power.  Transfer of all related cases to the

Eastern District of Virginia would therefore facilitate both the prompt and efficient adjudication

of these lawsuits and the convenience of parties and witnesses.

Moreover, the Eastern District is easily accessible from the Dulles International Airport

and the Reagan Washington National Airport.  The Alexandria courthouse is only five minutes

from Reagan National Airport.  Slightly further away is the Baltimore-Washington International

Airport.  All of these airports provide extensive direct and connecting service to numerous

destinations throughout the U.S.  The area is also serviced by commuter rail -- including high-

speed Amtrak service between New York City and Washington, D.C.   Alexandria, Virginia is

also within a reasonable distance of a number of business-class hotels in or around Alexandria

and in Washington, D.C..

---

[4] On information and belief, all individual defendants reside within the Eastern District of
Virginia, as does the corporate defendants Xybernaut and Grant Thornton LLP which conducted
its audits of Xybernaut's financial statements from its Vienna, Virginia office.

11

In sharp contrast, the District of Delaware has little to no connection to this litigation. While Xybernaut is incorporated within Delaware, along with numerous if not most other publicly-traded companies, its corporate headquarters is within the Eastern District of Virginia. If the state of incorporation alone were determinative, nearly every shareholder suit could be transferred to the District of Delaware given the large number of public companies incorporated in that state. Moreover, while a few of plaintiffs' counsel conduct their business in the District of Delaware, the relevant inquiry is what is most convenient to the parties and witnesses, not their counsel.[5] *See, e.g., In re Anthracite Coal Antitrust Litig.,* 436 F. Supp. 402, 403 (J.P.M.L. 1977).

Given all of the foregoing factors, the Eastern District of Virginia, is the "center of gravity" for this litigation. As such, it is the most appropriate transferee forum. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 568 F. Supp. 1250, 1251 (J.P.M.L. 1983) (selecting transferee forum based on the litigation's "center of gravity" and focal point of discovery).

---

[5]The Court should also be aware that most of the attorneys listed on the five complaints filed in the District of Delaware do not practice within that District. For example, of the four law firms listed as representing Mr. Aylor in the Aylor Action, only one is located within Delaware. In the case entitled, *Tal, et al. v. Xybernaut, et al.,* No. 05-00242, only one of three law firms is located in Delaware. Similarly, in the case captioned, *Jaskol, et al. v. Xybernaut, et al.,* No. 05-00268, the only Delaware firm listed on the complaint is the same as in *Tal, et al. v. Xybernaut* listed above. Furthermore, in the case entitled, *Fehrenbacher, et al. v. Xybernaut, et al.,* No. 05-00256, only one of two firms listed on the complaint practice in the District of Delaware. Moreover, in the case entitled, *Wauhop v. Xybernaut Corp., et al.,* No. 05-CV-00310, the exact same attorneys are listed on the complaint as in the Aylor Action. In addition, in the case entitled *Donelly, et al. v. Xybernaut, et al.,* No. 05-CV-00334, only one of the two firms listed practices in Delaware and that firm is listed on several other complaints. Lastly, in the case captioned *Charles W. Smith, et al. v. Xybernaut, et al.,* No. 05-CV-00354, only one of two firms practice in Delaware, and that firm is also listed on several complaints. Thus, of the twelve firms that are currently listed on the complaints filed in the District of Delaware, only three (including one firm with offices listed in Delaware and New York) are from Delaware.

12

In addition, docket congestion and the speed with which the litigation can be adjudicated

for pretrial purposes are also important considerations in choosing an appropriate transferee

forum. *See, e.g., In re Eastern Airlines, Inc., Flight Attendant Weight Program Litig.,* 391 F.

Supp. 763, 764-65 (J.P.M.L. 1975); *In re Peruvian Road Litig.,* 380 F. Supp. 796, 798 (J.P.M.L.

1974). Here, these factors overwhelmingly favor the Eastern District of Virginia as the

appropriate transferee forum. According to Federal Court Management Statistics for 2004 (the

twelve-month period ended September 30, 2004), the Eastern District of Virginia has an average

of 319 pending cases per judge, as compared to 521 for the District of Delaware. *See "US.

District Court – Judicial Caseload Profiles"* (attached hereto as Exhibit Four). Similarly, in the

Eastern District of Virginia the median time it takes for civil actions to go from filing to trial is a

mere 9.2 months, compared to 26 months for the District of Delaware.[6]

Given that: (1) Xybernaut's headquarters is located in the Eastern District of Virginia; (2)

all four individual defendants live within the Eastern District of Virginia; (3) Grant Thornton

LLP conducted its audit of Xybernaut's financial and operational results within the Eastern

District of Virginia; (4) the U.S. Attorney's office investigating Xybernaut is located within the

Eastern District of Virginia; (5) the headquarters of the SEC, which is where all Xybernaut's

---

[6] The judges in the Alexandria Division of the Eastern District of Virginia have demonstrated the ability to oversee complex multi-party securities fraud class actions in an effective and efficient manner. *See, e.g., Ganesh v. Computer Learning Centers, Inc.,* Case No. 98-CV-859-A; *Switzenbaum v. Orbital Sciences Corp.,* 99-CV-197-A; *In re Software A.G. Systems, Inc. Sec. Litig.*; Case No. 99-CV-496-A; *In re Microstrategy, Inc. Sec. Litig.,* Case No. 00-CV-479-A (massive accounting fraud involving Virginia-based company and its auditor, which was settled for approximately $150 million); *In re ECI Telecom, Ltd. Sec. Litig.,* Case No. 01-CV-91 3-A (involving an Israeli corporation and individual defendants residing in Israel); *In re PSI Net, Inc. Sec. Litig.,* Case No. 00-1850-A; *In re Cable & Wireless, PLC, Sec. Litig.,* Case No. 02-1860-A (case pending); *In re Bearingpoint Inc. Sec. Litig.*, Case No. 03-CV-1062-A.

13

filings were submitted, is located nearby in Washington, D.C.; and (6) the Eastern District of Virginia is most capable of adjudicating the related cases promptly and efficiently, the Eastern District of Virginia is clearly the most logical forum for this litigation.

## IV. CONCLUSION

The purpose of the Multidistrict Litigation Act is to secure the just, speedy and inexpensive determination of multidistrict civil litigation. *See, e.g., In re National Student Mktg. Litig.,* 368 F. Supp. 1311, 1316 (J.P.M.L. 1973). Because the Eastern District of Virginia is the most convenient, logical and efficient forum for the litigation of the claims alleged in the several securities fraud class actions pending against Xybernaut, certain of its officers and directors, and/or its auditor, Movants respectfully request that all such actions, whether presently or subsequently filed, be transferred to that District for consolidation or, in the alternative, coordination, of all pretrial proceedings in that forum.[7]

---

[7] Given that two of the three filed case in the Eastern District of Virginia were assigned to Judge Leonie Brinkema, this matter should be assigned to that judge upon transfer and coordination, absent some unknown conflict.

14

Dated: June 9, 2005                Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

_____

Steven J. Toll
Daniel S. Sommers
Scott L. Adkins
Jason M. Leviton
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Tel: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Movants Don R. Heilman, Simona Zuccarelli, and Dean Lawthers*

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Dale MacDiarmid
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

*Counsel for Movant Simona Zuccarelli*

**SPECTOR, ROSEMAN & KODROFF, P.C.**
Robert M. Roseman
Andrew D. Abramowitz
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611

*Counsel for Movant Dean Lawthers*

15



\\server\name

PSCRIPT Page Separator

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE XYBERNAUT CORP.         )      MDL DOCKET NO. _____
SECURITIES LITIGATION        )

**DON R. HEILMAN, SIMONA ZUCCARELLI, AND DEAN
LAWTHERS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER RELATED ACTIONS
TO THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA AND
TO CONSOLIDATE, OR, IN THE ALTERNATIVE,
COORDINATE, ALL PRETRIAL PROCEEDINGS THEREIN**

Pursuant to 28 U.S.C. § 1407(c)(ii), Don R. Heilman, Simona Zuccarelli, and Dean

Lawther ("Movants"), the named plaintiffs in the cases styled *Don R. Heilman, et al. v.*

*Xybernaut Corp., et al.*, No. 1:05-CV-00525 (E.D. Va. May 9, 2005); *Simona Zuccarelli, et al. v.*

*Xybernaut Corp., et al.*, No. 1:05-CV-00610 (LMB) (E.D. Va. June 2, 2005); and *Dean*

*Lawthers, et al. v. Xybernaut Corp., et al.*, No. 1:05-CV-00617 (TSE) (E.D. Va. June 3, 2005)

presently pending in the United States District Court for the Eastern District of Virginia,

respectfully move the Judicial Panel on Multidistrict Litigation to enter an order transferring,

consolidating, or, in the alternative, coordinating, all related actions therein to or in the United

States District Court for the Eastern District of Virginia.

## I. **INTRODUCTION**

On April 15, 2005, the first of a series of class action lawsuits was filed in the United States District Court for the District of Delaware against Xybernaut Corporation ("Xybernaut" or the "Company") and certain of its officers and directors. That action, entitled *Robert Aylor, Individually and on Behalf of Himself and All Others Similarly Situated v. Xybernaut Corporation, Edward G. Newman, M.D. Steven A. Newman, and Thomas D. Davis,* No. 1:05-CV-00222 (D. Delaware April 15, 2005) (the "Aylor Action"), sought relief for a class of persons who purchased the securities of Xybernaut and to recover damages caused by the defendants' alleged violations of the federal securities laws. By June 7, 2005, nine more cases had been filed against the same or similar defendants. As of the date of this filing, a total of ten class actions have been filed against the same or similar defendants. In addition, seven of the cases name Xybernaut's former auditor, Grant Thornton LLP, as a defendant.

The cases allege substantially overlapping and interrelated facts that implicate the same or similar legal issues: defendants' liability under the federal securities laws (15 U.S.C. § 78(j)(b), 78(t)(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder) in connection with the Company's admitted accounting improprieties in direct conflict with the Company's own corporate governance policies and Generally Accepted Accounting Practices ("GAAP") for fiscal years 2002 through 2005.

Venue is proper in the Eastern District of Virginia, where many of the acts and transactions constituting the violations of law alleged in the complaints are believed to have occurred. In addition, Xybernaut's headquarters is located in Fairfax, Virginia; all individual defendants maintain primary residences within the Eastern District of Virginia; and Grant

2

Thornton LLP's audits were conducted from its Vienna, Virginia office. Moreover, the United States Attorney for the Eastern District of Virginia has launched an investigation into Xybernaut and certain of its officers and directors, and the Company's Audit Committee, through its legal counsel, has contacted the Securities and Exchange Commission ("SEC"), which is headquartered in nearby Washington, D.C., in connection with the Company's internal investigation and findings.

## II. **BACKGROUND OF THE DISPUTE**

As alleged in the various related complaints, beginning as early as May of 2002, and continuing through April of 2005, defendants reported quarter after quarter of positive results in press releases and filings with the SEC. The Company attributed the results to, among other things, the sale of its handheld and wearable computer devices, as well as cost-cutting programs, financings, intellectual property licensing strategies, strategic partnerships and securing key accounts in the transportation, retail, military and homeland security sectors. *See Heilman Complaint* (attached hereto as Exhibit One)[1]. For example, in a press release announcing the Company's fourth quarter and full-year 2003 results, defendant Edward G. Newman, Chief Executive Officer and Chairman of Xybernaut, stated, "Management firmly believes that *the best is yet to come and we expect to extend the positive momentum the Company is currently experiencing.*" (Emphasis added). In reaction to defendants' statements, including the one above, the price of Xybernaut stock traded as high as $2.56 per share during the period from May 10, 2002 through and including April 8, 2005 (the "Class Period"). Unbeknownst to the Class,

_____

[1] All factual allegations set forth herein pertaining to defendants' alleged fraudulent conduct are derived from the *Heilman Complaint*.

3

however, and belatedly admitted by the Company on April 19, 2005, these statements were materially false and misleading because defendants failed to disclose the Company's purported success was the result of, in material part, improper accounting, made possible by a serious breakdown in the Company's internal controls. *See* April 19, 2005 Press Release, "Xybernaut Announces Completion of Audit Committee Investigation, Board's Adoption of Recommendations" (attached as Exhibit Two).

On February 17, 2005, after weeks of decline in the price of Xybernaut stock, the Company issued a press release stating "that it knows of no business reason or financial condition that would explain the decline in its stock price." In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per share, up $0.07 from its closing price on February 16, 2005.

On March 31, 2005, after the market closed, defendants issued a press release revealing that it had discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks. The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters. The Company stated that as a result of the investigation, it could not predict when it would file its 2004 annual report with the SEC, and cautioned that the delayed filing would prevent the Company from registering additional shares of stock. In addition, the Company revealed for the first time that, on February 1, 2005, nearly two months earlier, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder. Xybernaut also announced that it had received notification from Nasdaq that the Company's stock, which had been trading below $1.00 per

4

share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

On Friday, April 8, 2005, defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the Company's historical financial statements for fiscal 2002 and 2003; and the Company's financial statements for the interim first, second, and third quarters of 2002 and 2003. In reaction to this news, the price of Xybernaut stock, which had already fallen $0.53 per share since the Company's March 14, 2005 announcement that it would not be able to file its annual report, fell another $0.06 to close at $0.13 on the next trading day, Monday, April 11, 2005.

Less than two weeks later, on April 19, 2005, after the market had closed, the Company announced the completion of its internal investigation. Despite the report's lack of specificity, it made clear that the Company's management had engaged in serious undisclosed wrongdoing that had a material impact on the Company's financial condition and performance, and which rendered all statements by defendants suspect. The release stated in part, as follows:

1.    The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed properly to substantiate expenses charged to the Company.

2.    Members of the CEO's family employed by the Company were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.

3.    The employment of certain members of the CEO's family was not disclosed in SEC filings as required by SEC disclosure regulations.

5

4.  There has been a lack of adherence to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.

5.  Major transactions were entered into by certain members of senior management in violation of Company internal controls. Certain members of senior management failed properly to advise the Board of material financial conditions regarding major transactions.

6.  Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and

7.  Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

In response to the Audit Committee's Report and Recommendations, the Board today approved the following actions:

1.  Edward G. Newman was removed as Chairman of the Board and Chief Executive Officer of the Company, and from all other positions he holds with any Company subsidiaries or affiliates.

2.  Steven A. Newman was removed as President and Chief Operating Officer of the Company, and Vice Chairman of the Board, and from all other positions he holds with any Company subsidiaries or affiliates.

3.  The Board formally requested the resignations of Edward G. and Steven A. Newman as Directors of the Company, but neither individual has agreed to resign from the Board at this time.[2]

4.  Retired General William Tuttle was appointed as the Company's interim Chairman of the Board and Chief Executive Officer, while a search is conducted for new management.

5.  The Board authorized the retention of financial experts to assist the Board in maximizing shareholder value.

6.  In an effort to promote the independence of the Company's Board, three directors of the Company – James J. Ralabate, Dr. Edwin Vogt and Martin

---

[2]In a press release dated May 10, 2005, Xybernaut announced the resignation of Steven and Edward Newman from the Company's Board of Directors.

> Weisberg, each of whom provides other services for the Company –
> offered to resign from the Board. The Board determined to defer its
> acceptance of these offers upon an orderly transition to a new Board.

As a result of the Company's massive fraud, the release also announced that Grant

Thornton LLP had resigned because "in its professional judgement, it can no longer rely on

management's representations..." However, as is disclosed in the same release, Grant Thornton

LLP was not as innocent as they may have proclaimed. For example,

> [t]he report of Grant Thornton LLP on the Company's financial statements for the
> 2002 and 2003 fiscal years did not contain an adverse opinion or a disclaimer of
> opinion and were not qualified or modified as to uncertainty, audit scope, or
> accounting principles. In addition, in connection with the audits of the Company's
> financial statements ... there were no disagreements between the Company and
> Grant Thornton LLP on any matter of accounting principles or practices, financial
> statement disclosure, or auditing scope or procedure which, if not resolved to the
> satisfaction of Grant Thornton LLP, would have caused Grant Thornton LLP to
> make reference to the matter in connection with its report.

The class action complaints seek recovery for violations of the federal securities laws

under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule

10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder by the SEC.

For the reasons set below, the cases should be transferred to the United States District

Court for the Eastern District of Virginia and consolidated, or, in the alternative, coordinated

therein.

### III.  ARGUMENT

The Multidistrict Litigation Act sets forth three requirements for transfer. The transfer

must: (i) involve actions having one or more common questions of fact; (ii) further the "just and

efficient conduct" of the actions; and (iii) promote "the convenience of the parties and

7

witnesses." *See* 28 U.S.C. § 1407(a). In determining whether to transfer, the Panel is to weigh the interests of all parties and to consider the litigation as a whole. *See, e.g., In re Stirling Homex Corp. Sec. Litig.,* 442 F. Supp. 547, 550 (J.P.M.L. 1977) (citation omitted). Where significant benefits will be gained by coordinated and consolidated proceedings, a transfer should be ordered. *See In re New York City Mun. Sec. Litig.,* 439 F. Supp. 267, 270 (J.P.M.L. 1977). Class actions with similar or overlapping classes, in particular, are appropriate for transfer and coordinated or consolidated pretrial proceedings. *See, e.g., In re Resources Exploration, Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980); In *re Air West, Inc. Sec. Litig.,* 384 F. Supp. 609, 611 (J.P.M.L. 1974); *In re Republic National-Realty Equities Sec. Litig.,* 382 F. Supp. 1403, 1406 (J.P.M.L. 1974).

Here, the requirements for transfer under the Multidistrict Litigation Act are satisfied. Moreover, the balance of interests and other relevant factors lead to the conclusion that the most appropriate transferee forum is the Eastern District of Virginia.

A.  **The Actions Involve Core Common Questions of Fact**

Each of action is based on essentially the same core allegation: that Xybernaut, together with certain of its officers and directors, knowingly or recklessly engaged in improper accounting practices that permitted the Company to report quarter after quarter of positive results in press releases and filings with the SEC. The effect of these practices was to create the illusion that the Company was experiencing steady growth throughout the Class Period, which, in turn, had the effect of increasing the purchase price of Xybernaut's stock. The Defendants knowingly engaged in these improper practices throughout the Class Period without disclosing them to shareholders.

8

Each action asserts that the Company misrepresented and/or failed to disclose material facts concerning the Company and its finances based on the core allegation set forth above. Further, each action purports to bring claims on behalf of investors who purchased Xybernaut securities over the course of substantially overlapping class periods.[3]  Such cases are routinely found to involve common questions of fact sufficient to warrant transfer. *See, e.g., In re Waste Mgmt. Inc. Sec. Litig.,* 177 F. Supp. 2d 1373 (J.P.M.L. 2001); *In re Abercrombie & Fitch Co. Sec. Litig.,* No. 1336, 2000 U.S. Dist. LEXIS 4717 (J.P.M.L. Apr. 12, 2000); *In re Phar-Mor, Inc. Sec. Litig.,* No. 959, 1994 WL 41830, at * 1 (J.P.M.L. Jan. 31, 1994); *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 568 F. Supp. 1250 (J.P.M.L. 1983); *In re Four Seasons Sec. Laws Litig.,* 361 F. Supp. 636 (J.P.M.L. 1973). *See also 15* Charles A. Wright & Arthur R. Miller, *Federal Prac. & Proc.* § 3862 (observing that Section 1407 was specifically contemplated to deal with actions involving allegations of violations of the securities laws).

**B.    Transfer For Pretrial Consolidation or Coordination
        <u>Would Further the Just and Efficient Conduct of the Actions</u>**

Given that the actions present core common questions of fact, the actions will necessarily involve substantially similar and overlapping discovery.  Moreover, each of the ten class action assert the same federal securities laws claims on behalf of substantially similar or overlapping classes.  Thus, transfer is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.,* 177 F. Supp. 2d 1375, 1376

---

[3] The Class Period begins as early as May 10, 2002, and as late as March 27, 2003; it ends as early as April 8, 2005 and as late as April 19, 2005.  However, as noted herein, the slight differences in class periods does not preclude consolidation or transfer.

(J.P.M.L. 2001); *In re Computervision Corp. Sec. Litig.,* 814 F. Supp. 85 (J.P.M.L. 1993); *see also In re Practice of Naturopathy Litig.,* 434 F. Supp. 1240, 1243 (J.P.M.L. 1977) ("presentation of [motions to dismiss] to a single judge will further the purposes of Section 1407"); *In re Gen. Tire & Rubber Co. Sec. Litig.,* 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) (having actions before one judge would "ensure that duplicative discovery on the complex factual questions will be prevented" and "eliminat[e] the possibility of conflicting pretrial rulings"); *In re Transocean Tender Offer Sec. Litig.,* 415 F. Supp. 382, 384 (J.P.M.L. 1976) (transfer necessary to avoid conflicting rulings on pretrial motions).

### C.   The Eastern District of Virginia is the Most Appropriate Transferee Forum

The location of documents and witnesses and the residence and location of the defendants are important factors in determining an appropriate transferee forum. *See, e.g., In re Air Crash Disaster at Paris, France, on March 3, 1974,* 376 F. Supp. 887, 888 (J.P.M.L. 1974). As is set forth herein and in the accompanying motion, Xybernaut's headquarters is in Fairfax, Virginia – approximately 23.7 miles from the Alexandria federal courthouse. Thus, many of the relevant documents and witnesses are likely to be located in, or just outside of, Northern Virginia. Moreover, given that the pending federal investigation of Xybernaut is being conducted by the U.S. Attorneys Office for the Eastern District of Virginia, it is likely that many pertinent documents will ultimately be located in, or just outside of, the Eastern District of Virginia even if they are not presently housed there. *See* attached press release attached hereto as Exhibit Three.

On information and belief, defendants Thomas Davis, Edward Newman, Steven Newman, and Bruce Hayden live approximately 15.8 miles, 19.3 miles, 20.6 miles, and 51.9

miles from the Eastern District's Alexandria division, respectively.[4]  Other witnesses – such as

other employees of Xybernaut and Grant Thornton LLP – and documents in the possession of

these witnesses are also likely to be located in, or near, the Eastern District of Virginia.  In any

event, on information and belief, no defendant resides in Delaware or near the District of

Delaware.  In fact, on information and belief, defendants Edward Newman, Bruce Hayden,

Thomas Davis, and Steven Newman live approximately 142.7 miles, 141.3 miles, 122.7 miles,

and 118 miles from the District of Delaware's Wilmington courthouse.  Thus, pursuant to

Federal Rule of Civil Procedure 45, both the witnesses and the many relevant documents to this

litigation lie within the Eastern District's subpoena power.  Transfer of all related cases to the

Eastern District of Virginia would therefore facilitate both the prompt and efficient adjudication

of these lawsuits and the convenience of parties and witnesses.

Moreover, the Eastern District is easily accessible from the Dulles International Airport

and the Reagan Washington National Airport.  The Alexandria courthouse is only five minutes

from Reagan National Airport.  Slightly further away is the Baltimore-Washington International

Airport.  All of these airports provide extensive direct and connecting service to numerous

destinations throughout the U.S.  The area is also serviced by commuter rail -- including high-

speed Amtrak service between New York City and Washington, D.C.   Alexandria, Virginia is

also within a reasonable distance of a number of business-class hotels in or around Alexandria

and in Washington, D.C..

---

[4] On information and belief, all individual defendants reside within the Eastern District of
Virginia, as does the corporate defendants Xybernaut and Grant Thornton LLP which conducted
its audits of Xybernaut's financial statements from its Vienna, Virginia office.

11

In sharp contrast, the District of Delaware has little to no connection to this litigation. While Xybernaut is incorporated within Delaware, along with numerous if not most other publicly-traded companies, its corporate headquarters is within the Eastern District of Virginia. If the state of incorporation alone were determinative, nearly every shareholder suit could be transferred to the District of Delaware given the large number of public companies incorporated in that state. Moreover, while a few of plaintiffs' counsel conduct their business in the District of Delaware, the relevant inquiry is what is most convenient to the parties and witnesses, not their counsel.[5] *See, e.g., In re Anthracite Coal Antitrust Litig.,* 436 F. Supp. 402, 403 (J.P.M.L. 1977).

Given all of the foregoing factors, the Eastern District of Virginia, is the "center of gravity" for this litigation. As such, it is the most appropriate transferee forum. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 568 F. Supp. 1250, 1251 (J.P.M.L. 1983) (selecting transferee forum based on the litigation's "center of gravity" and focal point of discovery).

---

[5] The Court should also be aware that most of the attorneys listed on the five complaints filed in the District of Delaware do not practice within that District. For example, of the four law firms listed as representing Mr. Aylor in the Aylor Action, only one is located within Delaware. In the case entitled, *Tal, et al. v. Xybernaut, et al.*, No. 05-00242, only one of three law firms is located in Delaware. Similarly, in the case captioned, *Jaskol, et al. v. Xybernaut, et al.*, No. 05-00268, the only Delaware firm listed on the complaint is the same as in *Tal, et al. v. Xybernaut* listed above. Furthermore, in the case entitled, *Fehrenbacher, et al. v. Xybernaut, et al.*, No. 05-00256, only one of two firms listed on the complaint practice in the District of Delaware. Moreover, in the case entitled, *Wauhop v. Xybernaut Corp., et al.*, No. 05-CV-00310, the exact same attorneys are listed on the complaint as in the Aylor Action. In addition, in the case entitled *Donelly, et al. v. Xybernaut, et al.*, No. 05-CV-00334, only one of the two firms listed practices in Delaware and that firm is listed on several other complaints. Lastly, in the case captioned *Charles W. Smith, et al. v. Xybernaut, et al.*, No. 05-CV-00354, only one of two firms practice in Delaware, and that firm is also listed on several complaints. Thus, of the twelve firms that are currently listed on the complaints filed in the District of Delaware, only three (including one firm with offices listed in Delaware and New York) are from Delaware.

12

In addition, docket congestion and the speed with which the litigation can be adjudicated for pretrial purposes are also important considerations in choosing an appropriate transferee forum. *See, e.g., In re Eastern Airlines, Inc., Flight Attendant Weight Program Litig.,* 391 F. Supp. 763, 764-65 (J.P.M.L. 1975); *In re Peruvian Road Litig.,* 380 F. Supp. 796, 798 (J.P.M.L. 1974). Here, these factors overwhelmingly favor the Eastern District of Virginia as the appropriate transferee forum. According to Federal Court Management Statistics for 2004 (the twelve-month period ended September 30, 2004), the Eastern District of Virginia has an average of 319 pending cases per judge, as compared to 521 for the District of Delaware. *See "U.S. District Court – Judicial Caseload Profiles"* (attached hereto as Exhibit Four). Similarly, in the Eastern District of Virginia the median time it takes for civil actions to go from filing to trial is a mere 9.2 months, compared to 26 months for the District of Delaware.[6]

Given that: (1) Xybernaut's headquarters is located in the Eastern District of Virginia; (2) all four individual defendants live within the Eastern District of Virginia; (3) Grant Thornton LLP conducted its audit of Xybernaut's financial and operational results within the Eastern District of Virginia; (4) the U.S. Attorney's office investigating Xybernaut is located within the Eastern District of Virginia; (5) the headquarters of the SEC, which is where all Xybernaut's

---

[6] The judges in the Alexandria Division of the Eastern District of Virginia have demonstrated the ability to oversee complex multi-party securities fraud class actions in an effective and efficient manner. *See, e.g., Ganesh v. Computer Learning Centers, Inc.,* Case No. 98-CV-859-A; *Switzenbaum v. Orbital Sciences Corp.,* 99-CV-197-A; *In re Software A.G. Systems, Inc. Sec. Litig.;* Case No. 99-CV-496-A; *In re Microstrategy, Inc. Sec. Litig.,* Case No. 00-CV-479-A (massive accounting fraud involving Virginia-based company and its auditor, which was settled for approximately $150 million); *In re ECI Telecom, Ltd. Sec. Litig.,* Case No. 01-CV-91 3-A (involving an Israeli corporation and individual defendants residing in Israel); *In re PSI Net, Inc. Sec. Litig.,* Case No. 00-1850-A; *In re Cable & Wireless, PLC, Sec. Litig.,* Case No. 02-1860-A (case pending); *In re Bearingpoint Inc. Sec. Litig.,* Case No. 03-CV-1062-A.

13

filings were submitted, is located nearby in Washington, D.C.; and (6) the Eastern District of Virginia is most capable of adjudicating the related cases promptly and efficiently, the Eastern District of Virginia is clearly the most logical forum for this litigation.

## IV. <u>CONCLUSION</u>

The purpose of the Multidistrict Litigation Act is to secure the just, speedy and inexpensive determination of multidistrict civil litigation. *See, e.g., In re National Student Mktg. Litig.,* 368 F. Supp. 1311, 1316 (J.P.M.L. 1973).  Because the Eastern District of Virginia is the most convenient, logical and efficient forum for the litigation of the claims alleged in the several securities fraud class actions pending against Xybernaut, certain of its officers and directors, and/or its auditor, Movants respectfully request that all such actions, whether presently or subsequently filed, be transferred to that District for consolidation or, in the alternative, coordination, of all pretrial proceedings in that forum.[7]

---

[7] Given that two of the three filed case in the Eastern District of Virginia were assigned to Judge Leonie Brinkema, this matter should be assigned to that judge upon transfer and coordination, absent some unknown conflict.

14

Dated: June 10, 2005                    Respectfully submitted,

                                        **COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

                                        _____
                                        Steven J. Toll
                                        Daniel S. Sommers
                                        Scott L. Adkins
                                        Jason M. Leviton
                                        1100 New York Avenue, N.W.
                                        West Tower, Suite 500
                                        Washington, DC 20005-3934
                                        Tel:  (202) 408-4600
                                        Fax: (202) 408-4699

                                        *Counsel for Movants Don R. Heilman, Simona
                                        Zuccarelli, and Dean Lawthers*

                                        **GLANCY BINKOW & GOLDBERG LLP**
                                        Lionel Z. Glancy
                                        Michael Goldberg
                                        Dale MacDiarmid
                                        1801 Avenue of the Stars, Suite 311
                                        Los Angeles, CA 90067
                                        Tel: (310) 201-9150
                                        Fax: (310) 201-9160

                                        *Counsel for Movant Simona Zuccarelli*

                                        **SPECTOR, ROSEMAN & KODROFF, P.C.**
                                        Robert M. Roseman
                                        Andrew D. Abramowitz
                                        1818 Market Street, Suite 2500
                                        Philadelphia, PA 19103
                                        Tel: (215) 496-0300
                                        Fax: (215) 496-6611

                                        *Counsel for Movant Dean Lawthers*

15

`

# EXHIBIT 1



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2005 MAY -9 P 4: 41

| | | |
|---|---|---|
| DON R. HEILMAN, On Behalf Of Himself and All Others Similarly Situated, | ) ) ) | CLERK US DISTRICT COURT ALEXANDRIA, VIRGINIA Case No._____ |
| Plaintiff, | ) ) | CLASS ACTION COMPLAINT FOR |
| v. | ) ) | VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., THOMAS D. DAVIS, BRUCE C. HAYDEN, and GRANT THORNTON LLP | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiffs have alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") flings by Xybernaut Corporation ("Xybernaut" or the "Company"), as well as regulatory filings and reports, securities analysts reports and advisories about the Company, press releases, and media reports about the Company, and plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.     This is a class action on behalf of all persons and entities who purchased or otherwise acquired the securities of Xybernaut between May 10, 2002 and April 8, 2005, inclusive, and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Xybernaut is engaged in the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems, and software and service solutions to enhance product management, asset management, and the accuracy, timeliness and

1

utilization of captured data. The Company's flagship products include Atigo wireless displays,
which are computerized units which provide remote and mobile service representatives with
wireless and just-in-time access to product and customer data, and Mobile Assistant® wearable
computers, which provide the power and functionality of a desktop computer in remote, rugged
and space-constrained settings.

   3.  During the Class Period, Xybernaut reported quarter after quarter of
positive results in press releases and filings with the SEC. The Company attributed the results
to, among other things, the sale of its handheld and wearable computer devices, as well as cost-
cutting programs, financings, intellectual property licensing strategies, strategic partnerships
and securing key accounts in the transportation, retail, military and homeland security sectors.
For example, in a press release announcing the Company's fourth quarter and full-year 2003
results, defendant Edward G. Newman, Chief Executive Officer and Chairman of Xybernaut,
stated, "Management firmly believes that *the best is yet to come* and *we expect to extend the
positive momentum the Company is currently experiencing*." (emphasis added). In reaction to
defendants' statements, the price of Xybernaut stock traded as high as $2.56 per share during
the Class Period (on September 18, 2003). Unbeknownst to the Class, these statements were
materially false and misleading because defendants failed to disclose that the Company's
purported success was the result of, in material part, improper accounting, made possible by a
serious breakdown in the Company's internal controls.

   4.  The truth began to emerge on February 17, 2005. On that day, after
weeks of decline in the price of Xybernaut stock, the Company issued a press release stating
"that it knows of no business reason or financial condition that would explain the decline in its

stock price." In reaction to this announcement, the price of Xybernaut stock closed higher at $0.92 per share, up $0.07 from its closing price on February 16, 2005.

5.     On March 14, 2005, Xybernaut issued a press release announcing that it would be unable to file its 2004 annual report on file its annual report by March 31, 2005. In reaction to this news, the price of Xybernaut stock fell $0.12 from its closing price of $0.72 on March 11, 2005, the previous trading day, to close at $0.60 on March 14, 2005.

6.     On March 31, 2005, after the market closed, defendants issued a press release revealing that it had discovered material weaknesses in Xybernaut's internal controls with respect to expense reimbursement, revenue recognition, and the monitoring of business risks. The Company stated that it had engaged independent legal counsel to conduct an internal investigation of these matters. The Company stated that as a result of the investigation, it could not predict when it would be able to file its 2004 annual report with the SEC, and cautioned that the delayed filing would prevent the Company from registering additional shares of stock. In addition, the Company revealed for the first time that, on February 1, 2005, nearly two months earlier, it had received a subpoena from the SEC seeking documents relating to the sale of securities by an unidentified shareholder. Xybernaut also announced that it had received notification from Nasdaq that the Company's stock, which had been trading below $1.00 per share, was subject to delisting. In reaction to this news, the price of Xybernaut dropped another $0.18 per share from its closing price of $0.42 on March 31, 2005, to close at $0.24 on April 1, 2005.

7.     On April 8, 2005, the last day of the Class Period, defendants disclosed that the Company had received a letter from its auditor, Grant & Thornton LLP, questioning the accuracy and reliability of the Company's accounting and related disclosures; the

3

Company's historical financial statements for fiscal 2002 and 2003; and the Company's

financial statements for the interim first, second, and third quarters of 2002 and 2003. In

reaction to this news, the price of Xybernaut stock, which had already fallen $0.53 per share

since the Company's March 14, 2005 announcement that it would not be able to timely file its

annual report, fell another $0.06 to close at $0.13 on the next trading day, April 11, 2005.

       8.    On April 19, 2005, after the market had closed, the Company announced

the completion of its internal investigation. Despite the report's lack of specificity, it made

clear that the Company's management had engaged in serious undisclosed wrongdoing that

had had a material impact on the Company's financial condition and performance, and which

rendered all statements by defendants suspect:

> 1. The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed to properly substantiate expenses charged to the Company.

> 2. Newman's family members were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.

> 3. The employment of Newman's family members had not been disclosed in SEC filings as required by SEC disclosure regulations.

> 4. The Company had failed to adhere to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.

> 5. Senior Management had entered into major transactions in violation of Company internal controls and concealed material financial conditions of the transactions to the Board.

> 6. Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and

> 7. Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

4

The Company stated that it had removed, or had requested the resignation of, the officers and directors identified above. Moreover, the Company stated that Grant & Thornton had resigned as auditor because "in its professional judgment, it can no longer rely on management's representations." The Company repeated its warnings that "no reliance should be placed upon certain of the Company's historical financial statements, together with the related audit reports the Company received from its outside auditors."

9.       On April 25, 2005, Xybernaut announced that the United States Attorneys Office for the Eastern District of Virginia had commenced an investigation of the Company relating to the wrongdoing discovered in the Company's internal investigation. In addition, Xybernaut stated that "it continues to face a severe liquidity crisis and possible insolvency" and that there "can be no assurances that the Company will have sufficient cash to meet its financial obligations or fund continuing operations."

## JURISDICTION AND VENUE

10.       The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

11.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

12.       Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. In addition, Xybernaut maintains its corporate headquarters in this District.

13.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the Nasdaq.

## PARTIES

14.     Plaintiff Don R. Heilman purchased Xybernaut common stock during the Class Period, as set forth in his certification, annexed hereto, and suffered an economic loss as a direct result of defendants' fraudulent conduct as alleged herein.

15.     Defendant Xybernaut maintains its corporate headquarters at 12701 Fair Lakes Circle, Suite 550, Fairfax, Virginia 22033.

16.     Defendant Edward G. Newman ("E. Newman") was, at all relevant times, Chief Executive Officer and Chairman of the Board of the Company.

17.     Defendant Steven A. Newman ("S. Newman") was, at all relevant times, President, Chief Operating Officer and Vice Chairman of the Company.

18.     Defendant Thomas D. Davis ("Davis") was Chief Financial Officer and Senior Vice President of the Company from November 2002 to November 7, 2004.

19.     Defendant Bruce C. Hayden ("Hayden") was Chief Financial Officer and Senior Vice President of the Company from November 8, 2004 to present.

20.     Defendants E. Newman, A. Newman, Davis, and Hayden are collectively referred to herein as the "Individual Defendants."

21.     Defendant Grant Thornton LLP ("Grant Thornton") is a worldwide firm of certified public accountants that provides tax, assurance and advisory services. Grant Thornton is a member firm of Grant Thornton International, one of the six international accounting, tax and business advisory organizations. At all relevant times, Grant Thornton

6

served as the Company's auditor until its resignation on, or about, April 14, 2005. Grant

Thornton maintains its principal executive office in the United States at 175 West Jackson

Boulevard, Chicago, Illinois 60604.

        22.    Because of the Individual Defendants' positions with the Company, they

had access to the adverse undisclosed information about its business, operations, products,

operational trends, financial statements, markets and present and future business prospects via

access to internal corporate documents (including the Company's operating plans, budgets and

forecasts and reports of actual operations compared thereto), conversations and connections

with other corporate officers and employees, attendance at management and Board of Directors

meetings and committees thereof and via reports and other information provided to them in

connection therewith.

        23.    It is appropriate to treat the Individual Defendants as a group for pleading

purposes and to presume that the false, misleading and incomplete information conveyed in the

Company's public filings, press releases and other publications as alleged herein are the

collective actions of the narrowly defined group of defendants identified above. Each of the

above officers of Xybernaut, by virtue of their high-level positions with the Company, directly

participated in the management of the Company, was directly involved in the day-to-day

operations of the Company at the highest levels and was privy to confidential proprietary

information concerning the Company and its business, operations, products, growth, financial

statements, and financial condition, as alleged herein. Said defendants were involved in

drafting, producing, reviewing and/or disseminating the false and misleading statements and

information alleged herein, were aware or recklessly disregarded, that the false and misleading

7

statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

24.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the Nasdaq during the Class Period, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

25.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Xybernaut, each of the Individual Defendants had access to the adverse undisclosed information about Xybernaut's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Xybernaut and its business issued or adopted by the Company materially false and misleading.

8

26.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

27.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Xybernaut common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Xybernaut's business, finances, financial statements and the intrinsic value of Xybernaut common stock; and (ii) caused plaintiffs and other members of the Class to purchase Xybernaut securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Xybernaut between May 10, 2002 and April 8, 2005, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

9

29.    The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, there were approximately 179 million shares of Xybernaut common stock outstanding that were actively traded on the Nasdaq. While the exact number of Class members is unknown to plaintiffs at this through appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Xybernaut or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by defendants' acts as alleged herein;

b.    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial statements of Xybernaut; and

10

             c.      to what extent the members of the Class have sustained damages and the proper measure of damages.

       33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**SUBSTANTIVE ALLEGATIONS**

**Materially False And Misleading**
**Statements Made During The Class Period**

       34.     On May 9, 2002, after the market closed, Xybernaut issued a press release in which it announced its first quarter 2002 results. In the release, the Company reported "the highest first quarter results in the Company's history," stating, in relevant part, as follows:

> FAIRFAX, Va.--(BUSINESS WIRE)--May 9, 2002--Xybernaut Corporation (Nasdaq:XYBR) today announced quarterly revenues of $2.8 million for its first quarter ended March 31, 2002, the highest first quarter results in the Company's history.
>
> This represents a 24% increase compared with $2.3 million for the corresponding period a year ago.
>
> Hardware revenue for the quarter was $1.8 million, an increase of 38% from $1.3 million for the same period in the prior year. The net loss applicable to holders of common stock for the first quarter was $8.0 million, or $0.13 per share, compared with $5.9 million, also $0.13 per share, for the same period in the prior year.
>
> Results for the first quarter are consistent with the guidance previously given.

Defendant Edward G. Newman commented on the purportedly strong results as follows, in

11
